THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KARLENE K. PETITT,<br>　　　　Plaintiff,<br><br>v.<br><br>AIR LINE PILOTS ASSOCIATION,<br>　　　　Defendant. | No. 2:20-cv-01093-RSL<br><br>**DECLARATION OF<br>EMILIO MARCOS** |

I, Emilio Marcos, declare as follows:

1. I have served as the Chairman of the Contract Administration Committee for the Delta Airlines Pilots Master Executive Council ("MEC") since March 2019. The Delta MEC is the highest local coordinating body at Delta Airlines for the Defendant in this matter, Air Line Pilots Association ("ALPA").

2. My responsibilities as Contract Administration Committee Chairman include attendance at hearings of the Delta Airlines Pilots' System Board of Adjustment ("Board") and overseeing maintenance of copies of the Board's decisions.

3. I attended the October 15, 2019 Board hearing on Grievances 18-13 and 19-05 filed by the Plaintiff in this matter, Dr. Karlene Petitt. On March 16, 2020, I received via email a signed copy of the Board's Award, along with a copy of the dissent of the two ALPA-appointed

DECLARATION OF EMILIO MARCOS
(2:20-CV-01093-RSL) - 1

BARNARD IGLITZIN & LAVITT LLP
18 WEST MERCER STREET, SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

1  Board members.  Later that day, I forwarded that email (along with the Board's Award and the

2  dissent) to Dr. Petitt.  Attached hereto as Exhibit 1 are true and correct copies of the foregoing

3  email string with the attached Award and dissent.

4      4.    Also on March 16, 2020, Dr. Petitt responded to my email in Exhibit 1 via email,

5  and I responded via email later that day.  Attached hereto as Exhibit 2 is a true and correct copy

6  of that email exchange (in addition to other emails in that email string).

7      I declare under penalty of perjury that the foregoing is correct to the best of my

8  knowledge and belief.

_____     29 Sp 20
Emilio Marcos                                                Date

DECLARATION OF EMILIO MARCOS
(2:20-CV-01093-RSL) - 2

BARNARD IGLITZIN & LAVITT LLP
18 WEST MERCER STREET, SUITE 400
SEATTLE, WASHINGTON 98119-3971
(206) 285-2828

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October 2020, I electronically transmitted the attached Declaration of Emilio Marcos to the U.S. District Court Clerk's office using the CM/ECF System for filing which will send ECF notice of such filing to all participants of record.

Dated this 5th day of October 2020 Seattle, WA.

*s/Esmeralda Valenzuela*
Esmeralda Valenzuela, Paralegal

DECLARATION OF SERVICE
CASE NO.: 2:20-CV-01093-RSL

18 WEST MERCER ST., STE. 400  **BARNARD**
SEATTLE, WASHINGTON 98119  **IGLITZIN &**
TEL 800.238.4231 | FAX 206.378.4132  **LAVITT LLP**

# Exhibit 1

**From:** Marcos, Emilio, DALMEC Contract Administration
**Sent:** Monday, March 16, 2020 4:37 PM
**To:** 'Karlene Petitt' <karlene.petitt@gmail.com>
**Cc:** Finlay, William, DALMEC Contract Administration <William.Finlay@alpa.org>
**Subject:** FW: 18_13 and 19_05 Final Award.pdf

Karlene,

I have a copy of the final, just received it, with the dissention attached.

Emilio

**From:** McNerney, Jim, DALMEC Hotel Committee <Jim.McNerney@alpa.org>
**Sent:** Monday, March 16, 2020 4:23 PM
**To:** Marcos, Emilio, DALMEC Contract Administration <Emilio.Marcos@alpa.org>; larry.w.cochran@delta.com
**Cc:** Samuda, Rachel, Representation <Rachel.Samuda@alpa.org>; chris.b.puckett@delta.com; Saturday, Terry, Representation <Terry.Saturday@alpa.org>
**Subject:** Fw: 18_13 and 19_05 Final Award.pdf

Emilio and Wayne,

Here is the final award on grievance 18-13 and 19-05, now that all the the signatures are attached.

Captain J J McNerney
Chairman System Board of Adjustment

IN THE MATTER OF ARBITRATION BETWEEN

| | |
|---|---|
| Air Line Pilots Association, International,<br>        Association, | OPINION AND AWARD |
| and | Grievances of K.P. |
| Delta Air Lines, Inc.,<br>        Company. | ATL 18-13 and ATL 19-05 |

SYSTEM BOARD OF ADJUSTMENT:
Gerald E. Wallin, Esq., Neutral Member
Captain Ron Hay, Association Member
Captain Monty Montgomery, Association Member
Captain Ken Speir, Company Member
Captain Brian Pickett, Company Member

| | |
|---|---|
| DATE OF AWARD: | January 27, 2020 |
| HEARING SITE: | Atlanta, Georgia |
| HEARING DATES: | October 15, 2019 |
| EXECUTIVE SESSION(S): | Via conference call January 23, 2020<br>and January 27, 2020 |
| REPRESENTING THE ASSOCIATION: | Jeffrey Loesel, Esq.<br>Air Line Pilots Association, Int'l<br>Suite 400S<br>7950 Jones Branch Drive<br>McLean, VA 22102 |
| REPRESENTING THE COMPANY: | Jeffery D. Wall, Esq.<br>Jessica Asbridge, Esq.<br>Amber Arnette, Esq.<br>Ford & Harrison LLP<br>1300  19th Street, NW, Suite 420<br>Washington DC 20036 |

**JURISDICTION**

The undersigned was selected to serve as neutral member of the System Board of Adjustment ("System Board" or "Board") pursuant to the parties' Pilot Working Agreement ("PWA"). A hearing was held on October 15, 2019 to receive evidence concerning two grievances and related matters. The parties submitted pre-hearing documents regarding procedural issues. A verbatim transcript of the parties' presentations as well as a discussion by the Board was prepared by a certified reporter. The hearing was recessed by the Board after hearing the parties' presentations and the issues of procedural and/or substantive arbitrability of the two grievances were taken under advisement.

**ISSUES**

Are the two grievances procedurally and/or substantively arbitrable?

**BACKGROUND AND SYNOPSIS OF THE EVIDENCE**

**Introduction**

This Opinion and Award deals with two grievances that challenge various aspects of a medical review of Grievant's fitness to continue serving as a pilot. The review process was conducted from March of 2016 through September of 2017. Both of the grievances deal with events that occurred during the process. It concluded in Grievant's favor on September 2, 2017.

The PWA dictates that grievances must be filed within 120-days of the events that are claimed to have violated the PWA. Neither of the two grievances now before this Board were filed within 120 days after September 2, 2017, the end date of the review process. If that date initiated the 120-day filing time limit, it would have expired not later than January 1, 2018. If some other date initiated the running of the time limit, then we must determine when it started for each of the grievances. The two grievances before this Board are Grievance ATL 18-13 (hereinafter 18-13), which was filed on July 20, 2018, and Grievance ATL 19-05 (hereinafter 19-05), which was filed on February 6, 2019.

Grievances 18-13 and 19-05 are initially before this Board to determine whether they are procedurally and/or substantively arbitrable. Our analysis requires that we not only consider the two grievances, themselves, but also what influence there may be, if any, resulting from the disposition of two earlier grievances filed by Grievant. It is undisputed that the earlier two grievances dealt with the same medical review process that is drawn into question by the later two grievances now before us. In addition, we must consider to what extent the matter may be influenced by federal statutory and case law. And, of course, we must abide by the precise language of the PWA in our analysis. The PWA, in Section 18.B.2.a., requires a grievance to be filed "... within 120 days of the incident or occurrence giving rise to the dispute ..."

By federal law, the Company has a legal duty to perform its operations with the *highest possible* degree of safety in the public interest.[1] Accordingly, the Company is required to act appropriately whenever a concern about the safety of its operations comes to its attention.

All of the pilots who crew the Company's flight operations must be able to hold a First Class Medical Certificate (FCMC). The standards for holding an FCMC are established by the Federal Aviation Administration (FAA). Section 15 of the PWA establishes a medical review process for resolving questions about whether a pilot meets the physical and mental fitness standards for continuing to hold a FCMC. Section 15.B.9. provides that the review process "... is the exclusive procedure ..." for determining whether a pilot meets the medical standards. Section 15.C. specifies how an affected pilot is paid and/or reimbursed for expenses, while undergoing a medical review as well as how the pilot is to be compensated if the determination is in the pilot's favor.

The following is a general description of the operation of the Section 15 process. It begins with a review of a pilot's medical fitness by the Company's Director- Health Services (DHS). If the DHS thinks the process should be invoked, the DHS is to confer with an Aeromedical Advisor (AMA) from the Association's Aeromedical Office about choosing a Company Medical Examiner (CME). The DHS, however, selects the CME. The information the DHS provides to the CME is limited to "... medically relevant information provided by doctors and treating facilities." If the CME determines the pilot does not meet the medical standards, the pilot may challenge the determination by choosing a Pilot Medical Examiner (PME) to conduct a separate medical evaluation. If the PME's determination does not concur with that of the CME, the pilot may request a further review by a Neutral Medical Examiner (NME), who will preferably be a specialist. The NME will be selected by the mutual agreement between the CME and PME. The determination of the NME controls the outcome. The overall process is to be conducted as expeditiously as possible.

**Preliminary Matters**

As previously noted, the medical review of Grievant's fitness began in March of 2016 and concluded in September of 2017. Not surprisingly, there was a considerable amount of preliminary activity that preceded the filing of the two grievances in question. It includes the filing and disposition of two earlier grievances as well as activities surrounding those earlier grievances. It is this Board's understanding that Grievant acted *pro se* for all of the grievances, both the earlier two and the current two, with perhaps some amount of assistance from time to time from the Association. As will be noted later, the Association did not assume the role of Grievant's advocate until approximately one month prior to this Board's hearing scheduled for October 15, 2019.

---

[1] Italics supplied; 49 U.S.C. §44702(b)(1)(A)

The following attempts to present a background synopsis that describes the chronological order of events as closely as possible. That said, many of the events ran concurrently with considerable overlap. Because of this complexity, this Background Section is more comprehensive than otherwise would be the case. Dates are repeated frequently for clarity of context.

In late January of 2016, Grievant reported alleged safety issues[2] to two of the Company's senior management pilots. By letter dated March 17, 2016, the Company placed Grievant under a Section 15 medical review. The process concluded in early September of 2017, nearly nineteen months later. The determination of the NME was in Grievant's favor. Shortly thereafter, Grievant began the flight training required to return to pilot service. It is undisputed that Grievant was properly compensated and/or reimbursed in accordance with Section 15.C. of the PWA.

On July 11, 2016, approximately four months into the review process, Grievant filed Grievance ATL 16-11 (hereinafter 16-11) alleging the medical review process was "... done in retaliation for reporting ..." the safety issues. The grievance was denied by the Company on August 24, 2016. The grievance was submitted to the System Board process on September 1, 2016. However, it was never arbitrated. Instead, via letter dated April 17, 2018, the grievance was "withdrawn." The letter went on to say "Please consider it closed." The withdrawal of 16-11 came some seven months after the medical review process was determined in Grievant's favor.

On an unspecified date after the filing of 16-11, Grievant learned of a federal aviation whistle-blower law known as AIR 21. From the context of the parties' presentations at this Board's hearing, we understand Grievant initiated an AIR 21 claim running concurrently with 16-11. We further understand the jurisdiction for and enforcement of the AIR 21 law is a joint responsibility of the Department of Justice and the Occupational Safety and Health Administration. The AIR 21 process apparently provides parties with the ability to have discovery rights and, accordingly, enables access to documents for review.

On January 21, 2017, while the medical review process was approximately half-way through its course, Grievant reviewed the records of the CME and found some 1,319 pages of documents that were, in Grievant's view, either non-medical, falsified, or biased. Grievant believed the CME relied on such documents for his determination. In addition, Grievant began to suspect there were additional flaws in the Company's execution of the medical review process. Among them, Grievant suspected the CME unduly delayed the selection of an NME. Grievant also suspected the CME reported his conclusion to the FAA in violation of Section 15.B.7.b. of the review process. Assuming, for discussion purposes, this knowledge was gained on January 21st or shortly thereafter,

---

[2]Neither the details nor the nature of the alleged safety issues were provided to this Board.

4

the 120-day grievance filing time limit to challenge the suspected flaws would have expired on or about May 20, 2017.

On August 4, 2017, about one month before the medical review process concluded in Grievant's favor and more than two months after the 120-day filing time limit expired, Grievant filed Grievance ATL 17-14 (hereinafter 17-14) alleging multiple violations by the Company of its execution of the medical review process. On September 20, 2017, the Company denied the grievance. As will be discussed below, this denial date became significant. The Company's denial letter summarized the allegations in 17-14 into the three following allegations and went on to provide explanations for the denial of each. The three kinds of claims were as follows:

1. The Company provided the CME with non-medical, falsified, and biased information with intent to taint the CME's determination and diagnosis.
2. The Company unduly delayed the medical review process by failing to proffer a neutral NME to perform the final evaluation.
3. The CME's conclusion was reported to the FAA while the medical review process was pending.

Section 19.D.4. of the PWA establishes a separate time limit for hearing grievances that have been appealed to the System Board process. The provision includes two exceptions, neither of which applies to 17-14. The provision reads as follows:

4. If an unresolved dispute is not <u>heard</u> by the Board within 24 months of the earliest date the dispute may be submitted to it, the Company's prior decision will be final and binding.

(Underscoring supplied)

Because the Company's denial was dated September 20, 2017, that date became the earliest date the matter could be submitted to the System Board. Accordingly, the 24-month time limit would expire on the date of September 20, 2019 if the grievance had not been heard before then. It was never heard by the Board. Additional discussion about 17-14 will be provided later.

As early as July 12, 2017 through February 7, 2018[3], the Company and the Association discussed, on at least seven separate occasions, what Grievant saw were additional flaws by the Company in the execution of the medical review process. These additional flaws were different from those alleged in 17-14. These discussions began approximately seven weeks before the review process concluded in Grievant's favor and continued for approximately five months after the review process ended in September of 2017.

---

[3]Transcript page 35.

5

Assuming, again for discussion purposes, that February 7, 2018 was the latest date that triggered the 120-day filing time limit for the suspected additional flaws, Grievant had three alternative options available until approximately June 6, 2018 when the 120-day time limit ran out. First, there were discussions about amending 17-14 to include the additional flaws. Second, a new grievance could have been filed. Third, Grievant could have obtained an extension on the filing time limit to accomplish either of the first two options.

The evidence surrounding these seven discussions does not show the Company ever explicitly agreed to waive the 120-day filing time limit imposed by PWA Section 18.B.2.a. Nor does the evidence of the ongoing discussions show there was any actual request for a time limit extension. Indeed, by email dated July 18, 2018, the Company wrote that it would never waive its due process rights on the additional alleged flaws. The email went on to explicitly state, "We are not going to give up our procedural objection to timeliness, ..."

**Grievances 18-13 and 19-05 now at issue**

Two days later, on July 20, 2018, Grievant filed Grievance ATL 18-13 (hereinafter 18-13). It claimed the DHS improperly communicated to the NME beyond the physical standards to hold an FCMC in violation of Section 15.B.8.d. of the medical review process. It was denied by the Company by letter dated August 28, 2018 both on its merits and because "... it falls outside the procedural time limits." On October 11, 2018 it was appealed to the System Board process.

Although the medical review process had been concluded in Grievant's favor some sixteen months earlier, Grievant filed Grievance ATL 19-05 (hereinafter 19-05) on February 6, 2019. The grievance contained twelve numbered paragraphs of alleged flaws in the execution of the medical review process. The claimed flaws were either identical to or analogous to the claims in 17-14. The allegations in the grievance were denied both on their merits and procedural untimeliness. It was appealed to the System Board process on April 15, 2019.

During the summer of 2019, the Company and Association discussed scheduling 18-13 and 19-05 for a System Board hearing. October 15, 2019 was the date agreed upon.

Meanwhile, the expiration of the 24-month time limit on 17-14 was approaching. The Company wanted assurance that Grievant, who was still proceeding *pro se,* was aware of the consequences of failing to comply with the time limit. By emails dated May 15 and May 24, 2019, the Association attorneys assisting Grievant provided that confirmation. The email of May 24th noted that Grievant understood the Company's decision on 17-14 would be final and binding.

By letter dated June 5, 2019, Grievant notified the Company that 17-14 was withdrawn without prejudice. The notification letter read as follows:

> We are withdrawing Grievance No 17-14, without prejudice, as it has been subsumed by Grievance No 19-05, which was filed upon discovery of additional information related to the contract violations alleged in Grievance No 17-14.

By email dated September 23, 2019, an Association attorney informed the Company that Grievant had selected him as advocate and that Grievant would no longer be proceeding *pro se*.

**OPINION AND FINDINGS**

Although the foregoing Background section did not attempt to detail every facet of the evidence presented in this dispute, the factual findings made herein and the conclusions flowing therefrom are based on the entire record. All of the contentions that are inconsistent with the following findings and conclusions have been rejected after due consideration and will not be further addressed herein.

**Preliminary Matters concerning 16-11 and 17-14**

At issue in this dispute is the arbitrability of grievances 18-13 and 19-05. Before addressing them directly, however, certain preliminary observations are warranted about the disposition of grievances 16-11 and 17-14.

Grievance 16-11 alleged the medical review of Grievant's fitness was retaliation for reporting alleged safety violations. It was denied by the Company on August 24, 2016 and then appealed to the System Board process on September 1, 2016. The medical review process was concluded in Grievant's favor a year later on September 2, 2017. By letter dated April 17, 2018, the grievance was unilaterally withdrawn. The final sentence of the letter said, "Please consider it closed."

If the withdrawal of 16-11 means the grievance was resolved, the withdrawal constituted Grievant's acceptance of the Company's denial decision. Accordingly, that acceptance means the medical review process *was not* retaliation for reporting alleged safety violations.

In the alternative, if the withdrawal of 16-11 means the grievance was not resolved, then the 24-month hearing time limit continued to tick away. When it expired on August 24, 2018, the PWA made the Company's decision final and binding.

Under either analytical approach, the same result obtains: The invocation of the medical review process *was not* done as retaliation for Grievant reporting alleged safety violations.

Grievance 17-14 alleged a variety of flaws in the Company's execution of the medical review process. It was filed on August 4, 2017 and denied by the Company on September 20, 2017. The Company's denial condensed the claims in the grievance into three kinds and provided separate explanations for the denial of each as follows:

First, in response to the allegation that the Company provided non-medical, falsified and

7

biased information to the CME, the Company explained:

> "The CME requested information concerning your conduct, communications and interactions with Company representatives, and the Company simply complied with those requests, each of which was considered reasonable."

Second, in response to the allegation that the Company unduly delayed the medical review process and failed to proffer an NME to perform the final evaluation, the Company explained:

> "Contrary to your claim, it appears evident that your or one of your representatives caused the Pilot Medical Examiner ("PME") to refuse to participate in the NME selection process for a period of time."

The Company's letter went on to provide specific additional details that included naming names.[4]

Third, in response to the allegation that the Company reported the CME's conclusions to the FAA while the medical review process was pending, the Company contended the grievance did not accurately portray the facts. Instead, the Company explained:

> "It was you that initially contacted the FAA to apply for a first class medical certificate. As I am certain you are aware, in order to obtain a first class medical certificate you would have been required to disclose the fact you had seen the CME and that he had issued a report. The Company informed the FAA of the ongoing medical review and evaluation process only after, and because, you took action to obtain a first-class medical certificate in the middle of the process – without informing the Company. The FAA eventually found it appropriate to demand that you release the CME's report for their review. Thus, your decision to seek a first-class medical certificate during the medical review and evaluation process, not any plan or course of action initiated by the Company, drove this outcome."

As previously noted, the 24-month hearing time limit was started by the Company's denial of September 20, 2017. As the October 15th hearing date for grievances 18-13 and 19-05 approached, the Association and Grievant acknowledged knowing the consequences of the impending expiration of the time limit. On June 5, 2019, however, 17-14 was withdrawn "... without prejudice ..." by the Association. Moreover, the Association does not contend the grievance was resolved by its purported withdrawal.

We need not address the question of whether a grievance can effectively be withdrawn without prejudice by one party without the concurrence of the other party. This is because the PWA

---

[4] The details and names can be found under Tab 2 of the Company exhibit book.

dictates the impact of the time limit expiration and we must honor that negotiated result.

The PWA does not say the time limit is tolled by withdrawal of the grievance whether the withdrawal is with or without prejudice. Therefore, pursuant to Section 19.D.4., if an unresolved dispute is not heard within the 24-month time limit, the Company's decision becomes final and binding. Accordingly, the explanations provided in the Company's denial letter became established as facts that are final and binding. Therefore, the Company did not provide non-medical, falsified, and biased information to the CME. In addition, selection of an NME was not unduly delayed by the Company or its CME. Finally, the Company did not improperly report the CME's conclusions to the FAA.

**Grievances 18-13 and 19-05**

It is undisputed the parties discussed the substance of what became grievance 18-13 as early as July 12, 2017 and as late as February 7, 2018. Without question, therefore, the latest date 18-13 could have been filed and still be within the 120-day time limit was June 6, 2018. It was not filed until July 20, 2018. We find, therefore, that 18-13 is procedurally not arbitrable.

Grievance 19-05 was not filed until February 6, 2019. It is influenced by an additional consideration: The doctrine of Inquiry Notice. It is undisputed that Grievant gained access to some 1,319 pages of records on or before January 28, 2017 which led to the allegations in Grievance 17-14 which was filed on August 4, 2017. In addition, it is undisputed that Grievant also became aware of additional suspected flaws in the execution of the medical review process as early as July 12, 2017. As noted, those alleged flaws eventually became the basis for Grievance 18-13. It is also undisputed that Grievant acquired discovery rights via the AIR 21 process in those time frames. Finally, all of the allegations in 19-05 deal with alleged flaws in the execution of the medical review process that was concluded in Grievant's favor in early September of 2017, some seventeen months prior to the filing date.

The doctrine of Inquiry Notice has been accepted at law as well as in labor arbitration in the airline industry.[5] The doctrine applies when a person is aware of facts that would lead a reasonable person to exercise due diligence and investigate further to acquire actual knowledge of any additional similar facts. The doctrine imputes the knowledge that was in existence and could have been discovered to a claimant when the claimant has failed to timely investigate further. Therefore, we find Grievant was put on Inquiry Notice of all of the alleged flaws claimed in 19-05 not later than July 12, 2017, the date when the Company and Association began their series of seven discussions of additional flaws.

---

[5] See, for example, *Great Rivers Cooperative of Southeastern Iowa v. Farmland Industries, Inc.,* 120 F.3d 893, 896 (8th Cir. 1997) and *Airline Pilots Association, International v. Compass Airlines, LLC*, Case No. CPZ-98-18 (Suardi, Arb., April 2, 2019)

The Association and Grievant have neither claimed nor established that the Company or its CME somehow impeded or prevented the Grievant from conducting any further investigation in a timely manner.

Given the foregoing considerations, we find Grievance 19-05 was filed outside of the permissible 120-day time limit established by the PWA.  When measured from July 12, 2017, that filing time limit expired on or about November 9, 2017.  Accordingly, we find Grievance 19-05 is procedurally not arbitrable as a result.

To the extent that 19-05 also attempts to restate claims that were foreclosed by the final and binding consequences of 17-14, we find those claims are substantively not arbitrable.

## AWARD

Grievances 18-13 and 19-05 are not arbitrable as more fully set forth in the Opinion and Findings.  Accordingly, they must be dismissed.

_____
Gerald E. Wallin, Esq., Neutral Member

_____        _____
Captain Ron Hay                                                  Captain Ken Speir
Association Member                                        Company Member


_____        _____
Captain Monty W. Montgomery                     Captain Brian Pickett
Association Member                                        Company Member

The Association and Grievant have neither claimed nor established that the Company or its CME somehow impeded or prevented the Grievant from conducting any further investigation in a timely manner.

Given the foregoing considerations, we find Grievance 19-05 was filed outside of the permissible 120-day time limit established by the PWA. When measured from July 12, 2017, that filing time limit expired on or about November 9, 2017. Accordingly, we find Grievance 19-05 is procedurally not arbitrable as a result.

To the extent that 19-05 also attempts to restate claims that were foreclosed by the final and binding consequences of 17-14, we find those claims are substantively not arbitrable.

### AWARD

Grievances 18-13 and 19-05 are not arbitrable as more fully set forth in the Opinion and Findings. Accordingly, they must be dismissed.

*[signature]*
Gerald E. Wallin, Esq., Neutral Member

*[signature]*
Captain Ron Hay
Association Member
Dissent
See Attached paragraph

*[signature]*
Captain Ken Speir
Company Member

*[signature]*
Captain Monty W. Montgomery
Association Member
Dissent, see attached.

*[signature]*
Captain Brian Pickett
Company Member

10

### Dissenting Opinion of Association Board Members
### Capt. Ron Hay and Capt. Monty Montgomery

The Association Board members strongly dissent from the Board's findings in the present matter. Aside from our belief that the decision cannot be supported by the very limited record received by the Board, the decision contains extensive and unnecessary dicta that sows more confusion than it provides guidance. We will not enumerate here all of the concerns the dicta raise.

However, we have become aware that Delta has now attempted to submit a partially-executed version of this decision to the Administrative Law Judge in an attempt to have the Grievant's AIR21 case dismissed. The parties at the hearing agreed that the AIR21 case was separate and distinct from these proceedings (see Tr. 6-9), with Delta counsel Jeffery Wall responding to the concerns raised by the Association by providing Delta's agreement that "this is a matter that involves only contractual claims, or claims of contractual violations. And we concur that the issues that were presented and are still under adjudication in the AIR21 proceeding are not issues that should be considered by the Board here." (Tr. 9, emphasis added). It is reasonable to assume that the Grievant would not have gone forward absent such assurances from Delta that these proceedings would not affect her other claims. Despite this agreement from the parties, the Board proceeded to offer unnecessary and ill-advised comments as to the significance of those matters the parties had agreed it should not consider. The Board's discussion of Grievance 16-11 and comment that "the medical review process was *not* done as retaliation for Grievant reporting alleged violations" (Award at 7) asserts a conclusion on a matter on which the Board heard no evidence and which the parties agreed it should not consider, and which we understand is the issue the Administrative Law Judge is now considering.

The Board's decision constitutes a disservice to the federal policy of aviation safety and the promotion of safety culture embedded in the AIR 21 process.

_____    _____
Capt. Ron Hay                                               Capt. Monty Montgomery

# Exhibit 2

**From:** Marcos, Emilio, DALMEC Contract Administration
**Sent:** Monday, March 16, 2020 4:54 PM
**To:** 'Karlene Petitt' <karlene.petitt@gmail.com>
**Cc:** Finlay, William, DALMEC Contract Administration <William.Finlay@alpa.org>; Loesel, Jeffrey, Representation <Jeffrey.Loesel@alpa.org>
**Subject:** RE: FW: 18_13 and 19_05 Final Award.pdf

Karlene,

As you know, signing the document has never had the individual dates as you have requested. That would be out of the norm, but also the way the company managed this award is out of the normal course of business. That is why I sent to you the original document from Jim McNerney showing you the time and date that award was made official from our perspective.

I am also not privy to the conversations that the board had after the 27th of Jan, in their discussions about the award. So those dates and times are never recorded.

Emilio

**From:** Karlene Petitt <karlene.petitt@gmail.com>
**Sent:** Monday, March 16, 2020 4:47 PM
**To:** Marcos, Emilio, DALMEC Contract Administration <Emilio.Marcos@alpa.org>
**Cc:** Finlay, William, DALMEC Contract Administration <William.Finlay@alpa.org>; Loesel, Jeffrey, Representation <Jeffrey.Loesel@alpa.org>
**Subject:** Re: FW: 18_13 and 19_05 Final Award.pdf

Emilio, Thank you. I do not need to express how many times I requested that when they signed these documents that they date them... you have been copied on many of those emails. In response to what has transpired with this process, and the timing of all this, and how with ALPA's effort this was used against me.... I'm finding this extremely difficult to view this lack of dates as an oversight.

These documents now appear that they were all signed on January 27, 2020. Which we all know is not true. In that you expressed your intention to cry foul, this also harms your efforts as well.

Will you please send me the dates that each person signed these documents.

Thank you,
Karlene

*Karlene Petitt*

PhD. MBA. MHS.
Typed: B777, A330, B747-400, B747-200, B767, B757, B737, B727,

Order your books today at: http://karlenepetitt.blogspot.com

On Mon, Mar 16, 2020 at 1:36 PM Marcos, Emilio, DALMEC Contract Administration <Emilio.Marcos@alpa.org> wrote:

> Karlene,
>
> I have a copy of the final, just received it, with the dissention attached.
>
> Emilio
>
> ---
>
> **From:** McNerney, Jim, DALMEC Hotel Committee <Jim.McNerney@alpa.org>
> **Sent:** Monday, March 16, 2020 4:23 PM
> **To:** Marcos, Emilio, DALMEC Contract Administration <Emilio.Marcos@alpa.org>; larry.w.cochran@delta.com
> **Cc:** Samuda, Rachel, Representation <Rachel.Samuda@alpa.org>; chris.b.puckett@delta.com; Saturday, Terry, Representation <Terry.Saturday@alpa.org>
> **Subject:** Fw: 18_13 and 19_05 Final Award.pdf
>
> Emilio and Wayne,
>
> Here is the final award on grievance 18-13 and 19-05, now that all the the signatures are attached.
>
> Captain J J McNerney
> Chairman System Board of Adjustment